[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-14091
Non-Argument Calendar
_____

D.C. Docket No. 1:14-cv-03539-CC


TROY FAGG,

                                                            Plaintiff -Appellant,

versus

UNITED STATES OF AMERICA, et.al.,

                                                            Defendant -Appellees.


_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(May 16, 2016)

Before WILSON, JORDAN, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Troy Fagg appeals the district court's dismissal of his negligence suit against the United States under the Federal Tort Claims Act, 28 U.S.C. § 1346(b). He argues that the decision of the United States Postal Service to not have armed guards escort him as he retrieved mail from a post office branch does not come within the discretionary function exception to the FTCA, *see* 28 U.S.C. § 2680(a), and that the district court therefore erred in dismissing his case for lack of subject-matter jurisdiction.

Following review of the record and consideration of the parties' briefs, we affirm the district court's dismissal of Mr. Fagg's FTCA suit.

## I

We review *de novo* the district court's interpretation and application of the discretionary function exception to the FTCA, and accept the factual allegations in the complaint as true. *Hughes v. United States*, 110 F.3d 765, 767 (11th Cir. 1997). Because we write for the parties, we recite only what is necessary to resolve this appeal.

In December of 2013, Mr. Fagg worked for Davosa Transport Service Trucking Company transporting mail for the USPS. On December 20, while Mr. Fagg was retrieving mail at the end of the day from the Conley Post Office—in Georgia—two armed men held him at gunpoint and stole his truck. The robbers shot Mr. Fagg in the stomach, and restrained him with zip ties. Mr. Fagg

eventually freed himself and flagged down a passing vehicle. He then received treatment at a local hospital and incurred a large hospital bill.

In the 13 months prior to the robbery of Mr. Fagg, there had been two previous robberies at the Conley Post Office. The USPS responded to these earlier robberies by arranging for armed guards to escort drivers who picked up and delivered mail at the Conley Post Office at the end of the day. But the practice of providing armed security only lasted a brief amount of time, and it had been discontinued by the time of Mr. Fagg's robbery in December of 2013.

Mr. Fagg filed a negligence suit under the FTCA against the United States and several individuals involved with the USPS. The United States filed a motion to dismiss for lack of subject-matter jurisdiction, arguing that the USPS' decision to discontinue the use of armed guards fell within the discretionary function exception to the FTCA. The district court agreed with the United States and granted its motion to dismiss. [1]

## II

The FTCA waives the United States' sovereign immunity and provides district courts with jurisdiction over the United States for certain harms caused by the negligent acts of government employees acting within the scope of their

---

[1] The FTCA does not allow for suits against individuals. *See* 28 U.S.C. § 2679(a),(b)(1). The claims against the individual defendants were dismissed in the district court and are not at issue on appeal.

employment. *See* 28 U.S.C. § 1346(b). An exception to this waiver of sovereign immunity is the discretionary function exception:

> Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). To determine whether the discretionary function exception is applicable we apply a two-part test. *See Hughes*, 110 F.3d at 767 (citing *United States v. Gaubert*, 499 U.S. 315, 322–23 (1991)). We first look to see if the challenged conduct involves an element of judgment or choice. *See id.* We then determine whether that judgment was of the kind that the discretionary function exception was designed to shield. *See id.*

### A

As to the first question, "[t]he relevant inquiry is whether the controlling statute or regulation mandates that a government agent perform his or her function in a specific manner." *Hughes*, 110 F.3d at 768 (internal citation omitted). There are no statutes, regulations, or express policies of the USPS mandating that armed guards escort delivery drivers when they pick up or deliver mail at a post office. Mr. Fagg's contention—that the USPS' use of armed escorts at the Conley Post Office over an undisclosed period of weeks at some point prior to his robbery

4

created a mandate that the USPS was not permitted deviate from—is unconvincing.

The USPS has the general power to operate and maintain buildings and facilities. *See* 39 U.S.C. § 401(6). The governing regulations designate the Chief Postal Inspector as the security officer for the USPS and task him with responsibility "for the issuance of instructions and regulations pertaining to security requirements within the Postal Service." 39 C.F.R. § 231.1(b). In accordance with the rules issued by the Chief Postal Inspector, each postmaster or a designated supervisor is responsible for the general security of a post office, its stations, and branches. *See* 39 C.F.R. § 231.2. A Postal Operations Manual provides additional regulations of the operation of a post office. *See* 39 C.F.R. § 211.2(a)(2). *See also Hughes*, 110 F.3d at 768.

"These general guidelines do not mandate a specific course of conduct regarding security at a post office." *Hughes*, 110 F.3d at 768. The Security Control Officer is given broad discretion in arranging security at a post office in accordance with the regulations established by the Chief Postal Inspector. *See id.* The wide latitude given to a postmaster concerning the security measures that are to be taken at a given location allows for ample room to exercise judgment and choice. *See id.*

The decision as to the use or non-use of armed escorts for mail pickup and delivery at the Conley Post Office is not mandated by any statute or regulation. We therefore agree with the district court that the wide latitude allowed in choosing whether and how to provide security at post offices satisfies the first prong of the discretionary function test.

**B**

Having concluded that the conduct in question involved a discretionary judgment or choice, we examine whether that judgment is of the type that the discretionary function exception was designed to shield. *See Hughes*, 110 F.3d at 768. We focus on whether the challenged actions are "susceptible to policy analysis." *Id*.

We faced an almost identical set of facts in *Hughes*. There the plaintiff challenged certain security decisions made by the USPS, such as remaining open on a 24-hour basis and not providing security for the patrons, inadequate lighting, and maintaining foliage where assailants could hide. *Id*. at 766. We held that decisions concerning post office security are a fundamental part of the economic and social policy analysis associated with achieving the goal of providing postal service in the United States. *Id*. at 768. "When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts

6

are grounded in policy when exercising that discretion." *Id.* (citing *Gaubert,* 499 U.S. at 324).

Due to the general nature of the statutes and regulations governing the USPS, postal employees have considerable discretion concerning the allocation of resources. *See id.* They must decide how to allocate resources so as to best serve customers in a prompt, reliable, and efficient manner. *Id.* Although financial considerations alone may not necessarily make a decision one involving policy, such considerations are particularly relevant to the Postal Service, which is "operated as a basic and fundamental service provided to the people." 39 U.S.C. § 101(a). *See Hughes*, 110 F.3d at 769. As in *Hughes*, "we will not second guess the Postal Service's resource allocation decisions." *Id.* (citations omitted).

## III

Given our decision in *Hughes*, we affirm the district court's dismissal of Mr. Fagg's complaint for lack of subject-matter jurisdiction.

**AFFIRMED.**